## PAJEWSKI *v.* CARONDELET CANAL & NAVIGATION CO.*

*(Circuit Court, E. D. Louisiana. June, 1881.)*

1. ADMIRALTY—CANAL—NEGLIGENCE—SUNKEN PILES.

   It is negligence for the proprietors of a canal charging tolls on vessels using the same, to have sunken piles at the entrance of and inside of their canal, with no danger signals, no matter how long they have been there, nor how well known; and it was negligence for them to leave a wreck on its beam-ends, with her masts projecting into the channel of the canal, with no danger signals; and they will be held responsible for the wreck of a vessel upon such obstructions.

2. LIGHTS—NEGLIGENCE.

   Under the facts in this case, failing to have a light on the bow of a schooner entering such canal at night cannot be considered as negligence.

3. DAMAGES.

   Where the court allows a total loss, nothing can be allowed to the libellant for his expenses in endeavoring, unsuccessfully, to raise his sunken schooner.

*Reported by Joseph P. Hornor, Esq, of the New Orleans bar.

The respondents are proprietors of a canal running from Lake Pontchartrain into the city of New Orleans. At its entrance is a triangular breakwater, composed of piles, many of which are old and rotted away above the surface of the water. This breakwater divides the entrance into two passages, and, just prior to the accident complained of, a schooner, the Mary Diana, had been wrecked upon some of the sunken piles, and lay upon her beam-ends with her mast projecting into the channel. Under these circumstances the schooner George Pandelly, in attempting to enter the canal at night, there being no lights displayed to show the wreck or the sunken piles, ran upon those obstructions and was wrecked.

*Richard De Gray*, for libellant.

*Henry D. Ogden*, for respondents.

Pardee, C. J. There can be no question of the responsibility for negligence and carelessness of the respondents, who are proprietors of a canal charging tolls on vessels using their canal. It is negligence on the part of the respondents to have sunken piles at the entrance of and inside their canal with no danger signals, no matter how long they have been there, nor how well known. It was negligence on the part of the respondents to leave the Mary Diana on her beam-ends, with her mast projecting into the channel, with no danger signals. In consequence of these sunken piles, and the projecting mast of the Mary Diana, the George Pandelly was wrecked. With stringers or a guard on the outside of the sunken piles, and with a danger signal showing the wreck of the Mary Diana, the passage would have been safe, and the Pandelly would not have been lost.

The court finds that reasonable care and diligence were used on board the Pandelly by her captain and crew in entering the canal. The captain himself was at the helm; the crew were forward and on the lookout. The channel is a narrow one. In order to enter the canal it is necessary to come close to the obstructions. The proper entrance and exit on the route to the Tchefuncta river is nearer to the western side of the eastern pass than to the eastern side of that pass. The pass, at its entrance, according to the survey of Bell, is about 150 feet, and at its narrowest place about 75 feet wide. A schooner coming in at this pass must necessarily come close to one side or the other of the pass, even if she follows the middle of the channel. It is no evidence of negligence on the part of the Pandelly that she came nearer to the western side of the eastern pass in her attempt to enter the canal; she was not in fault in so entering or trying to enter.

Failing to have a light on the bow of the Pandelly cannot be considered as negligence. The evidence satisfies me that a light on the bow of the Pandelly would have obstructed the view. The lookout would see much better without such a light than with it.

So far as the law is concerned, under the conclusion as to the facts as found above, it is immaterial whether the proprietors of a canal charging toll are held to greater diligence, and persons navigating the canal to less diligence, than in ordinary matters of tort. The respondents having been guilty of negligence, and the libellant not having been guilty of negligence, it is clear that the respondents are liable for the damages occasioned by the loss of the Pandelly.

It seems that after the Pandelly sunk the libellant notified the canal company of the loss, and called upon the company to raise and repair the vessel. This the company neglected and refused to do. Thereupon the libellant undertook the job himself; but after expending much money and time abandoned the enterprise, and gave up his schooner as a total loss. In this condition the schooner remained until after the decree based thereon was rendered in the district court. After that decree the respondents employed means proper and necessary, and raised what was left of the hull. This seems to have been done more as a means of obtaining satisfactory evidence than for the value of the thing.

The schooner and cargo may, therefore, be taken as a total loss, and the damages may be calculated on that basis.

Now as to damages:

1. As to the value of the schooner.

The finding of the commissioner, as reported to the district court, (on the examination of witnesses whose testimony is all in the record,) was that said schooner was worth $2,700. At that time the Pandelly had not been raised. The actual condition of her hull was not shown, except by general declarations that she was sound and tight. Since that finding, however, the schooner appears to have been raised, and her hull is shown to have been unsound, her planks rotten, and generally not in good order. This appears from the condition of the hull when raised. From this condition, when raised, various experts have assessed the value of the boat before she sank, and the general average of their appraisement is $1,500. The court is inclined to give effect to this last appraisement, because it appears from the record that the Pandelly was an old schooner, built in 1871, and sold in 1875 for the sum of $1,500, and resold to libellant in 1876 for

$2,000, since which time the evidence shows that about $300 worth of repairs only have been put upon her. Considering the wear and tear necessary in such property, and all the evidence and appraisements, it seems that $2,000 would be nearer the actual value than the larger amount allowed by the commissioner. A schooner worth $2,000 in 1875, and only repaired $300 worth, can hardly have increased in value since 1876.

2. The amount claimed by libellant as expenses and services in trying to raise the Pandelly cannot be allowed, as the schooner is adjudged a total loss.

3. The claim for $1,000, made for personal damages, cannot be allowed.

From Pajewski's evidence it appears that immediately on his vessel striking he went ashore in a boat, went inland along the canal looking for a tow-boat, and not finding one went voluntarily back on board the Pandelly. Having voluntarily placed himself on board the Pandelly after her sinking, he can claim no damages for his personal suffering aboard that night.

4. There seems to be no dispute with regard to the cargo lost—$76; clothes of libellant, $100; two compasses, $50: four wheelbarrows, $28; one stage, $20. The libel mentions nothing with regard to tools, therefore nothing can be allowed for them. Neither can anything be allowed for use of vessel during the time necessary to repair and refit her; as the court allows Pajewski the total value of his vessel.

It is shown also by the evidence that a lot of tackle, apparel, and furniture were taken off from the Pandelly by the libellant, and they are now in his possession. Experts value these goods at $375.

It would seem, therefore, that the damages for which the respondents are liable should be summed up in this way:

| | |
|---|---:|
| Value of schooner, | $2,000 00 |
| Clothes that libellant lost, | 100 00 |
| Two compasses       " | 50 00 |
| Four wheelbarrows   " | 28 00 |
| One stage           " | 20 00 |
| Value of cargo      " | 76 00 |
| Amounting to | $2,274 00 |
| From which amount should be deducted value of goods taken by libellant, | 375 00 |
| Leaving balance of | $1,899 00 |

The respondents having raised the hull of the Pandelly more to be used as evidence than for her value, and the court considering the Pandelly a total loss, adjudges the respondents to be the owners of the hull or hulk as she now lies. It is proper to state that since the decree in the district court much and important evidence has been taken.

Let a decree be entered up in accordance herewith, and giving libellant costs in both courts.